**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **THE VILLAGE OF ENDICOTT,**<br>*Plaintiff,*<br>*v.*<br>**INTERNATIONAL BUSINESS MACHINES CORPORATION (“IBM”),**<br>*Defendant.* | **Case No. 7:24-cv-09242-NSR-JCM**<br><br>**ORDER ESTABLISHING PROTOCOL FOR DOCUMENT AND ESI COLLECTION AND PRODUCTION** |

This Order Establishing Protocol for Document and ESI Collection and Production (“Order” or “Protocol”) governs the discovery, collection, review, and production of documents and electronically stored information (“ESI”) in the above-captioned action. ESI shall mean any electronically stored active-user files, including but not limited to: email; word-processing documents; spreadsheets; electronic slide presentations; databases; and other reasonably accessible data reasonably anticipated to be subject to discovery pursuant to the Federal Rules of Civil Procedure.

This Protocol supplements the Federal Rules of Civil Procedure, the Local Civil Rules of the United States District Court for the Southern District of New York, the Court’s Individual Rules, and any Stipulated Protective Order entered in this Action.

The Parties enter into this Protocol to promote the just, speedy, and inexpensive determination of this Action, consistent with Federal Rule of Civil Procedure 1, and to reduce unnecessary burden and expense associated with the collection, review, and production of hard-copy documents and ESI.

Nothing in this Protocol expands or limits any Party's obligations under the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the Local Civil Rules, the Court's Individual Rules, or applicable law, nor does it waive any Party's objections to discovery, including objections based on relevance, proportionality, privilege, burden, confidentiality, admissibility, or preservation.

The Parties may agree in writing to modify or supplement this Protocol as necessary, subject to Court approval where required. All disclosures and productions made pursuant to this Protocol shall be subject to the Stipulated Protective Order entered in this Action.

The Parties agree to meet and confer regarding any disagreements that arise as a result of the implementation of this Protocol or other discovery-related matters. To the extent a Party that is producing Documents and ESI (a "Producing Party") reasonably expects production of specific paper documents or ESI will be impractical or unduly burdensome, the Parties will meet and confer in good faith to attempt to agree on an acceptable format for production pursuant to Fed. R. Civ. P. 34(b)(2)(E) and the Individual Practices of the assigned Magistrate Judge.

## I. <u>Previously Collected, Processed, or Produced Documents</u>

1. A Party shall not be required solely by reason of this Protocol to re-collect, re-process, or re-produce Documents or ESI that were previously collected, processed, reviewed, or produced before entry of this Protocol.

2. To the extent a Party elects to produce Documents or ESI in this Action that were previously collected, processed, reviewed, or produced in another litigation, investigation, regulatory proceeding, or similar matter, that Party shall not be required solely because of such prior collection, processing, review, or production to re-run processing, re-extract metadata, re-collect source materials, or otherwise recreate the prior production in order to conform to every

requirement of this Protocol. Such prior Documents or ESI may be produced in this Action either in the form in which they were previously produced or, at the Producing Party's election, in native format together with any available metadata, and a Producing Party shall not be required to re-image, re-format, or otherwise convert such materials in order to produce them.

3. Nothing in this section relieves a Party of its obligation to conduct reasonable and proportionate searches for responsive Documents and ESI in this Action, to supplement its productions as required by the Federal Rules of Civil Procedure, or to collect and produce additional responsive Documents and ESI not encompassed within any prior collection, review, or production.

4. If a Party contends that additional metadata, custodians, date ranges, search methodologies, or source materials are reasonably necessary notwithstanding a prior collection or production, the Parties shall meet and confer in good faith regarding the scope of any additional discovery before seeking relief from the Court.

## II. <u>Preservation and Production of Data</u>

5. By preserving information that may be relevant to the claims and defenses asserted in this Action, a Party shall not be deemed to have waived any objection to discovery, including objections based upon relevance, proportionality, burden, privilege, or admissibility.

6. Absent a showing of good cause, the Parties' preservation efforts, litigation hold procedures, collection methodologies, and other steps undertaken to comply with preservation obligations shall not be subject to discovery.

7. All discovery of ESI under this Protocol is subject to the scope-of-discovery and proportionality limitations of Federal Rule of Civil Procedure 26(b)(1). In identifying custodians and data sources, formulating and refining search and review methodologies, and determining the

scope of collection, review, and production, the Parties shall account for proportionality under Rule 26(b)(1), and nothing in this Protocol limits any Party's right to seek to narrow or limit proposed discovery of ESI on proportionality grounds. The Parties shall meet and confer in good faith regarding the identification, collection, search, review, and production of ESI, including:

a. relevant custodians;

b. relevant non-custodial data sources;

c. relevant time periods;

d. search methodologies, including keyword searching, technology-assisted review ("TAR"), analytics, conceptual searching, or other reasonable means of identifying potentially responsive information;

e. the scope of any proposed collections; and

f. any other issues reasonably necessary to facilitate efficient and proportionate discovery.

8. The Producing Party shall provide proposed search terms, search strings, or search criteria to the Receiving Party. The Parties shall meet and confer in good faith concerning any proposed modifications, additions, date restrictions, custodian limitations, or other refinements.

9. Nothing in this Protocol requires a Party to utilize, or prohibits a Party from utilizing, any particular search methodology, search term, TAR process, review protocol, validation technique, sampling methodology, or other review workflow, provided that the methodology employed is reasonable and proportionate under Federal Rule of Civil Procedure 26.

10. The Parties shall cooperate in good faith to address disputes regarding custodians, search methodologies, search terms, date ranges, data sources, or other ESI-related issues before seeking relief from the Court.

11. A Party's prior collection, review, or production of Documents or ESI shall not relieve that Party of its obligation to conduct reasonable supplemental discovery as required by the Federal Rules of Civil Procedure.

12. The Parties agree that the circumstances of this Action do not warrant the preservation, collection, review, production, or identification on a privilege log of ESI that is not reasonably accessible or that the Parties otherwise agree need not be collected. Nothing in this paragraph is intended to alter or affect in any way any legal obligations to preserve evidence and does not alter or limit applicable law, if any, regarding spoliation. Nothing in this Protocol prevents any Party from asserting, in accordance with the Federal Rules of Civil Procedure, that other categories of ESI are not reasonably accessible within the meaning of Fed. R. Civ. P. 26(b)(2)(B), 26(b)(1), and 26(c).

## III. ESI Production Specifications for Documents Not Previously Collected, Processed, or Produced

The Specifications in this Part apply to ESI documents not previously collected, processed, reviewed, or produced.

13. Unless otherwise agreed by the Parties, ESI shall be produced in reasonably usable form. Email and other standard electronic documents shall be produced as single-page TIFF images with associated load files and extracted text or OCR text. Native files shall be produced where specified below or where necessary to preserve usability.

14. ESI will be produced in "last saved" or "last modified" format.

15. TIFF images shall be generated directly from the original electronic files and shall not be created by printing electronic files to paper and rescanning them. Images shall be produced at a resolution sufficient to preserve readability and shall include Bates numbering and confidentiality designations, if applicable.

16. All produced Documents and ESI will have a unique Control Identification Number or Bates number assigned, regardless of the format of the Documents and ESI, and the file produced will be named with the unique identifier. For Documents and ESI produced in TIFF image format, each TIFF image will have a legible, unique page identifier electronically endorsed onto the image at a location that does not obliterate or obscure any information from the source document. A Producing Party should use a consistent format for the Bates numbers it uses across its productions. Separate folders will not be created for each document. Each Party shall apply a consistent Bates prefix and a fixed number of digits across its productions: Plaintiff shall use the prefix END_IBM_ followed by eight (8) digits, and Defendant shall use the prefix IBM followed by eight (8) digits.

17. Unless otherwise agreed by the Parties, productions shall be provided in Concordance-compatible format, with a delimited data load file (.DAT) and an image cross-reference load file (.OPT). The following load files may be combined to address all content provided within a single production (i.e., all documents produced on a single piece of media or through a single file transfer).

a. Image Cross-Reference Load File. Provide a comma-delimited image load file that contains document boundary reference data, page counts, and media volume information.

b. Text Cross-Reference Load File. For all TXT files, provide a comma-delimited load file with each document's beginning Bates number along with the full path to the associated extracted text/OCR text file.

c. Native Cross-Reference Load File. For all native files, provide a comma-delimited load file with each document's Bates number along with the full path to the produced native file.

d. Structured ESI Cross-Reference Load File. For all reports, provide a comma-delimited load file with each document's Bates number along with the full path to the produced report.

18. The Producing Party shall produce the following metadata fields to the extent they exist and were preserved:

i. BegAttach
ii. EndAttach
iii. From
iv. To
v. Cc
vi. Bcc
vii. Subject
viii. Date Sent
ix. Date Created
x. Date Modified
xi. Custodian
xii. File Name
xiii. File Path
xiv. File Type
xv. Bates Begin
xvi. Bates End
xvii. Deduplicated Custodian
xviii. MD5 Hash (or equivalent hash value)
xix. Extracted Text Path
xx. Native File Path or Link
xxi. Page Count
xxii. Confidentiality Designation
xxiii. Redaction Indicator
xxiv. File Size
xxv. File Extension
xxvi. Author
xxvii. Message ID
xxviii. HasAttachments
xxix. AttachmentCount

xxx. AttachmentNames
xxxi. Time Zone
xxxii. File_Path / OriginalFilePath
xxxiii. ESI Type
xxxiv. Time Sent

19. The Parties agree to undertake reasonable efforts to produce a load file containing, if available in the normal course and reasonably practical to do so, the metadata fields enumerated above.

a.No Party has an obligation to create or manually code metadata fields that are not automatically generated by the processing of the ESI or that do not exist as part of the original metadata of the electronic document except for: BegBates; EndBates; BegAttach; EndAttach; Confidentiality; and Custodian.

b. The Parties may rely on the metadata automatically generated by the processing of the ESI, and no Party has an independent obligation to review the metadata of individual files to ensure the metadata's accuracy.

c. For redacted documents, the Producing Party will provide all available metadata fields except for: Subject; File Name; and File_Path. To the extent these metadata fields do not disclose attorney-client privilege, attorney work product, or otherwise privileged information, these metadata fields will be provided in a subsequent metadata overlay provided at the time of the privilege log associated with the redacted document(s).

20. Documents that cannot reasonably be reviewed in image format because their functionality would be materially degraded by conversion to TIFF shall be produced in native format unless redacted. Where a native file is produced, the Producing Party shall also produce a Bates-numbered placeholder page identifying the document and any applicable confidentiality designation.

21. Extracted text shall be produced where reasonably available. For redacted documents produced in TIFF format, OCR text may be substituted for extracted text.

22. The Parties' E-Discovery Liaisons shall meet and confer regarding the production of databases, structured data, engineering applications, environmental modeling files, and any other file types that do not readily conform to the production specifications in this Protocol. If the Parties are unable to reach agreement, either Party may seek relief from the Court.

23. **De-duplication**. A Producing Party may remove exact duplicate ESI documents on the basis of MD5, SHA-1, SHA-256, or equivalent hash values. De-duplication may be performed at the custodian level or globally across custodians. For email and other messaging files, the de-duplication hash value shall be generated for the entire email family and shall include the Subject, To, From, CC, BCC, and Body fields together with the content of any attachments; the Message ID field shall not be included in the hash calculation.

24. Attachments shall not be eliminated as duplicates unless both the parent document and all attachments are duplicates. Emails containing content in BCC fields shall not be treated as duplicates of emails lacking such content.

25. A Party may apply commercially accepted "near-duplicate de-duplication" software in reviewing and producing ESI.

26. If global de-duplication is utilized, the Producing Party shall identify all custodians from whom a duplicate document was collected through a "Deduplicated Custodian" field or similar metadata field.

27. **Email Threading**. A Producing Party may utilize commercially reasonable email-threading technology and may produce only the most inclusive email thread, provided that all unique content contained in lesser-included emails is preserved within the produced thread.

28. Any attachments to responsive emails shall be produced in accordance with this Protocol.

29. Where email threading is utilized for privileged communications, a Producing Party may log the most inclusive email thread rather than each individual email contained within that thread.

30. **De-NISTing.** A Producing Party may remove commercially available operating system, application, and other non-user-generated files identified on the then-current National Institute of Standards and Technology ("NIST") file list.

31. **Zero-byte Files.** A Producing Party may exclude files containing no user-created content, including files identified as zero-byte files, system files, and standard application-generated files that contain no substantive information.

32. **Parent-Child Relationships.** Parent-child relationships shall be preserved to the extent reasonably practicable.

33. Email families shall be produced as family groups, including responsive attachments associated with responsive parent emails.

34. If a responsive parent document contains a non-responsive attachment that is withheld, the Producing Party may produce a Bates-numbered placeholder identifying the withheld attachment as non-responsive unless the attachment itself is responsive.

35. The Parties shall meet and confer regarding any disputes concerning withheld non-responsive attachments.

36. **Embedded Objects.** To the extent reasonably practicable, embedded files and OLE objects shall be extracted and treated as attachments to the parent document.

37. Logos, signature graphics, decorative images, system-generated images, and similar non-substantive embedded objects need not be separately extracted or produced unless responsive to a discovery request.

38. **Production of Native Files.** Certain file types shall ordinarily be produced in native format, including presentations, spreadsheets, databases, delimited data files, audio files, video files, GIS files, environmental modeling files, engineering modeling files, and any other file type for which static image production would materially degrade usability.

39. For documents produced in native format, the Producing Party shall not alter formulas, hidden columns, filters, pivot tables, or other native functionality contained in the original file. To the extent practical, the Producing Party shall use reasonable efforts to ensure that all encrypted files are decrypted prior to processing and searching, and shall produce passwords for any password-protected native files produced to the extent the passwords are reasonably available.

40. A Producing Party producing documents in native format shall provide a Bates-numbered placeholder page identifying the document and any applicable confidentiality designation. The native-file placeholder shall bear the legend “Document Produced in Native Format,” shall be accompanied by a document-level text file containing the document’s extracted or OCR text, and shall carry applicable Bates numbering and confidentiality branding, with the native file produced together with the placeholder. Where a document within a produced family is withheld in full on the basis of privilege and a placeholder is produced in its stead, the placeholder shall bear the legend “Document Withheld for Privilege,” shall be accompanied by a text file containing that placeholder language, and shall carry applicable Bates numbering and confidentiality branding; no native file shall be produced for such a withheld document. A

Receiving Party may request native production of a document produced in image format upon a showing of particularized need.

41. The Parties shall meet and confer in good faith regarding any such request before seeking Court intervention.

42. Nothing in this Protocol requires a Producing Party to produce categories of documents in native format on a wholesale basis absent agreement of the Parties or order of the Court.

## IV. Hard-Copy Production Specifications for Documents Not Previously Collected, Processed, or Produced

The Specifications in this Part apply to Hard-Copy documents not previously collected, processed, reviewed, or produced.

43. Hard-copy documents may be produced in paper form or, at the Producing Party's election, as electronic images. If produced electronically, hard-copy documents shall be scanned and produced as single-page TIFF images, together with appropriate load files and OCR text, to the extent reasonably practicable.

44. Hard-copy documents produced electronically shall be Bates numbered and shall include any applicable confidentiality designation pursuant to the Protective Order.

45. To the extent reasonably practicable, hard-copy documents shall be logically unitized, maintained in the order in which they were kept in the ordinary course of business, and scanned in a manner that preserves the original document orientation. Distinct documents should not be merged into a single record, and individual documents should not be split into multiple records.

46. Where a hard-copy document contains color that is necessary to understand the document, the Producing Party shall produce the document in color upon request or may initially

produce the document in color. The Parties shall cooperate in good faith regarding any disputes concerning the need for color production. A Producing Party shall not be required to re-image in color any hard-copy document for which no color source document or native file is reasonably available, including a document maintained only as a monochrome scanned image with associated OCR text.

47. If a hard-copy document contains affixed notes or similar materials and the affixed material obscures information contained on the underlying page, the Producing Party shall, upon reasonable request, produce images sufficient to show both the note and the information underneath, to the extent reasonably practicable.

48. Consistent with Federal Rules of Civil Procedure 26 and 34, a Producing Party may make hard-copy records available to a Requesting Party for inspection and copying. In such instances, the Parties shall meet and confer regarding the time, location, and other considerations with respect to the inspection and copying.

49. OCR text shall be produced for electronically scanned hard-copy documents to the extent reasonably available. A Party shall not be required to re-scan or re-process (including re-OCR) hard-copy documents that were scanned before entry of this Protocol solely to comply with the specifications set forth herein.

50. If a Party determines that any requirement of this Section imposes an undue burden or presents a practical difficulty, the Parties shall meet and confer in good faith regarding a reasonable alternative method of production before seeking relief from the Court.

## V. <u>Other Issues</u>

51. **Costs.** Except as otherwise provided by law, court order, or agreement of the Parties, each Party shall bear its own costs of preserving, collecting, reviewing, and producing Documents and ESI.

52. If a Party requests discovery that imposes an undue burden or expense, seeks cumulative or duplicative information, or otherwise requires disproportionate collection, review, restoration, processing, or production efforts, the Producing Party may object, and the Parties shall meet and confer in good faith regarding an appropriate resolution.

53. If the Parties are unable to resolve the dispute, either Party may seek appropriate relief from the Court, including cost-shifting or cost-sharing, consistent with the Federal Rules of Civil Procedure.

54. **Redactions.** A Producing Party may redact from any produced Document, ESI, metadata field, or native file information protected by the attorney-client privilege, work-product doctrine, common-interest doctrine, joint-defense privilege, or any other applicable privilege, immunity, confidentiality obligation, statute, regulation, court order, or provision of the Protective Order.

55. Redactions shall be narrowly tailored to redact only the information entitled to protection. The Producing Party shall clearly indicate the existence of a redaction on the face of the produced document and, where practicable, identify the basis for the redaction (e.g., "Redacted").

56. Documents containing limited privileged redactions need not be separately logged on a privilege log if the basis for the redaction is evident from the face of the document and the non-redacted information is sufficient to permit assessment of the privilege claim.

57. If a document that would otherwise be produced in native format requires redaction, the Producing Party may produce the document in TIFF or PDF format with the redactions applied together with OCR or extracted text, and need not produce the native version unless otherwise agreed by the Parties or ordered by the Court.

58. Nothing in this Section shall limit a Party's rights under the Protective Order or any applicable privilege, immunity, or protection, including the clawback and non-waiver provisions governing inadvertently produced privileged material.

59. **Encryption and Secure Transmission.** A Producing Party may encrypt any production media or electronic transfer used to transmit Documents or ESI. Any passwords, decryption keys, or access credentials necessary to access the production shall be provided separately and contemporaneously with the production.

60. Productions may be transmitted by secure file transfer, secure cloud-based transfer, encrypted electronic media, or other commercially reasonable secure transmission methods.

61. **Foreign Language Documents.** Documents shall be produced as maintained in the ordinary course of business.

62. If a document exists in both English and a foreign language version, the Producing Party may produce either or both versions.

63. Nothing in this Protocol requires a Party to create or obtain a translation of any document that does not already exist.

64. **Time Zone Standardization.** To the extent reasonably practicable, ESI shall be processed using a consistent time zone across each Producing Party's collection. Unless otherwise agreed, metadata reflecting date and time information may be standardized to Coordinated Universal Time (UTC).

65. Nothing in this Protocol requires a Producing Party to alter original source data or metadata.

66. **Protective Order.** All productions made pursuant to this Protocol are subject to the Protective Order entered in this Action. In the event of a conflict between this Protocol and the

Protective Order, the Protective Order shall govern issues relating to confidentiality and designation of produced materials.

67. **Further Conferral.** If compliance with any provision of this Protocol presents an undue burden, technical limitation, or other practical difficulty, the Parties shall meet and confer in good faith regarding a reasonable alternative before seeking relief from the Court.

68. **Privilege Log.** The Parties shall meet and confer regarding the format, scope, timing, and level of detail required for privilege logs.

69. The Parties may agree to categorical privilege logging, logging by family, logging by email thread, or other reasonable methods to reduce the burden of privilege logging consistent with the Federal Rules of Civil Procedure and the Court's Individual Rules.

70. Nothing in this Protocol affects the Parties' rights under Federal Rule of Evidence 502(d) or the Protective Order.

71. **E-Discovery Liaison.** Each Party shall designate one or more E-Discovery Liaisons knowledgeable about that Party's ESI systems, collection efforts, search methodologies, production procedures, and technical capabilities.

72. E-Discovery Liaisons shall participate in good-faith discussions concerning ESI issues and shall cooperate in addressing technical issues, production issues, and discovery disputes before seeking Court intervention.

73. **Review for Responsiveness and Privilege.** Nothing in this Protocol limits a Producing Party's right to review Documents, ESI, metadata, or information for responsiveness, relevance, confidentiality, privilege, work-product protection, or other applicable protections before production.

74. **Method of Production.** Unless otherwise agreed by the Parties, productions may be made by secure file transfer, secure cloud-based transfer, encrypted electronic media, or another mutually acceptable method reasonably designed to protect the confidentiality and integrity of the produced materials.

SO STIPULATED AND AGREED.

Dated: August 27, 2026

White Plains, New York

**NAPOLI SHKOLNIK PLLC**

By: */s/ Robert Gitelman*
Robert Gitelman, Esq.
Stephen A. Acquario, Esq.
360 Lexington Avenue, Floor 11
New York, NY 10017-6502
Tel.: (212) 397-1000 | Fax: (646) 843-7603
RGitelman@napolilaw.com
SAcquario@napolilaw.com

*Counsel for Plaintiff the Village of Endicott*

**ARNOLD & PORTER KAYE SCHOLER LLP**

By: */s/ Jeffrey D. Talbert*
Jeffrey D. Talbert
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8000
Jeff.Talbert@arnoldporter.com

Lauren C. Daniel (admitted pro hac vice)
601 Massachusetts Ave NW
Washington, DC 20001
Telephone: (202) 942-5970
Lauren.Daniel@arnoldporter.com

*Attorneys for Defendant International Business Machines Corporation*

**SO ORDERED.**

Judith C. McCarthy
_______________________________

JUDITH C. McCARTHY

United States Chief Magistrate Judge

Dated: August 27, 2026